and the next case on the calendar is New York State v. FERC. Good morning, your honors. May it please the court, Brian Lusignan for the Department of Environmental Conservation. Your honors, FERC's waiver order authorizes National Fuel to construct a 100-mile-long pipeline that the department has concluded will violate state water quality standards. FERC found the state waived its right to deny certification because the department, with National Fuel's express written agreement, took an extra month to complete its review of National Fuel's voluminous Section 401 application, multiple supplemental submissions, and some 5,700 public comments. FERC's order is based on two fundamental legal errors, each of which is independently fixed. First, FERC failed to apply the rule that statutory time periods and rights may be waived or modified by agreement unless Congress intends otherwise. Second, FERC ignored National Fuel's express contractual promise not to challenge the agreed-upon date of receipt. With respect to the first legal error, the general rule is that statutory deadlines and rights of all types may be waived or modified by agreement. Excuse me, could you first address the question of our appellate jurisdiction? Both parties have called our attention to the D.C. Circuit's Allegheny case in which that court said that FERC's practice of, ironically, granting itself extensions of time was impermissible and that, as a result, if FERC fails to act in 30 days, it is deemed to have denied an application or denied the motion for reconsideration and appellate jurisdiction exists at that point. That's a final decision. If that's so, does a party have an option to just wait and let FERC grant itself extensions illegally and then wait for an actual decision on a motion for reconsideration? How can that be? Yes, Your Honor. What the National Gas Act says is if FERC fails to act within 30 days on a request for rehearing, that request may be deemed denied. It also provides for judicial review of rehearing orders on the merits of the rehearing request. So I think although Allegheny complicates the jurisdiction of this court, it is still possible for a party to move for rehearing and then decide after 30 days whether it wants to, if FERC hasn't acted on the merits of the request, deem it denied or wait for FERC to issue a decision on the merits of the rehearing request. Your position is you can do either. That's right, Your Honor. I would argue that rehearing denial itself is ultimately the final order at issue in this case. I understand your position. Thank you. Thank you, Your Honor. On the first issue, as I said, the rule that statutory deadlines may be waived or modified, but here FERC applied the opposite presumption, concluding that because Section 401 is silent on whether it can be waived or modified, Congress somehow precluded the parties from entering an agreement like the one that is. In your brief, you rely heavily on the line of authority about claim processing rules, and those rules usually require the filing of a complaint within some time limit, but this rule is really of a different category, isn't it? I mean, if the state fails or refuses to act on a request for certification within a reasonable period of time, which shall not exceed one year, the certification requirement shall be waived. It seems a different category of rule to me than claims processing rules, which don't seem to have an underlying substantive policy objective in the way this rule does. Your Honor, I agree it's somewhat different than a typical claims processing rule such as a statute of limitations, but courts in reviewing whether these rights can be modified or waived have held that all types of rights are subject to a waiver. This includes, for instance, the formalities of a deposition in the Shute v. Thompson case, evidentiary rules regarding statements made in the course of plea negotiation at U.S. v. Mezzanotto. So the type of right or time period hasn't been determinative in the court's review of these modification agreements or waiver situations. The one case that's most on point is Millennium Pipeline Company v. Gutierrez. In that case, the District of Columbia District Court applied these straightforward, well-established legal principles about waiver and modification to the Coastal Zone Management Act, which is a very similar structure to Section 401. Actually, your time is just about up, but one question for you. Do you think under the 401 scheme a party could simply wait until 360 days had elapsed, withdraw its application, wait another 10 days, and change it around a little bit and resubmit it? I think whether the applicant could do that, the answer is yes. Well, then the six-month deadline is meaningless. The inquiry is always whether, and this goes to the Hooper Valley case in some ways, is whether the agreement or the process was intended to avoid making a decision to circumvent the statute and courts and FERC are able to evaluate these agreements, these processes, on a case-by-case basis to determine whether that's happened. And that's not the case here. We have a 36-day extension to complete review of a very large-scale infrastructure project. I see that we're out of time. Excuse me. I have another question about Hooper Valley. Doesn't that suggest that there are – Microphone problems. Excuse me? I'm sorry. Doesn't Hooper Valley also suggest that there are, in effect, other constituencies besides the applicant for the permit and the DEC here, that there may be other people or other interests that are affected by – have an interest, perhaps, in a speedy resolution of the case who aren't represented? Does that make a difference in the question of whether a party can simply waive this deadline? No, Your Honor. All of these statute limitations, claim processing rules, evidentiary rules, serve a public purpose, and yet they've all been held to be subject to waiver. Additionally, a third party that's adversely affected by an agreement or waiver is free to also challenge that agreement. That's what happened in Hooper Valley. But here you have the party that agreed to the extension trying to get out of it and get out of the bargain for benefit that they obtained through that agreement. Thank you. Thank you. We'll hear from Ms. Nassman. Thank you, Your Honor. Thank you, Your Honor. May it please the court, my name is Minnie Mae Smith with Earth Justice on behalf of Petitioner Sierra Club. I'd like to make a couple of points initially. First, the text of Section 401 does not actually give us a clear answer to the question that the court needs to grapple with here. The statute says only that the clock starts upon the date of receipt. And as this court has already had to question, the statute does not actually define receipt. And it doesn't say that a new date of receipt cannot be selected. This court has concluded only that receipt does not mean receipt of a complete application. Because in that situation, it would upend the scheme Congress had created under 401 to give all the power to a subject... Didn't we recognize the provision as a bright line rule of sorts? That's one of the reasons we said receipt means receipt, not receipt of a complete application. Yes, Your Honor, but in that situation... And if we accept your... I'm hoping all of you will help us out this morning. If we accept your interpretation, doesn't that mean that essentially this is no longer a bright line rule? Well, Your Honor, the bright line rule that this court found was, again, that receipt means not receipt of a complete application. And in that same decision, the court also directed DEC that it was allowed to ask the applicant to withdraw and resubmit its application. There is no difference between that and what happened here. And the bright line rule is that the purpose of the statute cannot be eviscerated to the point where there is absolutely nothing happening that states time for action. And Hoopa Valley Tribe, in fact, gives us that example. It's not necessarily about a bright line rule. It is about a totality of the circumstances where you have an applicant in a state conspiring to indefinitely shelve for a decade and counting an application, do absolutely nothing on it, and thereby not only shut out third parties, as Judge Lynch was referring to earlier, but also to completely hijack FERC's permitting process. That isn't what happened here. It's nothing close to what happened here. And on the flip side, what we also have to be mindful of are the consequences of FERC's entirely rigid interpretation, which is to create a set of incentives to have applicants game the system so that if the state is a mere hour late in its determination, the entire structure Congress has created, whose fundamental purpose is to empower the states to make these decisions, gets upended. Well, what do you think Congress had in mind when it said six months? Your Honor, Congress didn't say six months. Congress said a reasonable time not to exceed a year. EPA's regulations for other kinds of— I'm sorry, not to exceed a year. What do you think Congress had in mind? So Congress wanted to create a reasonable time not to exceed a year. And so it is a year, but you also have to read it in connection with a year from what? Six months doesn't really mean—I mean, a year doesn't really mean a year. A year might not mean a year, but there is still an intent by Congress to, in the words in the congressional record, it's clear to not allow indefinite delay. The triggering event that you refer to is receipt. I mean, I understand your argument. I understand your argument that it's kind of a formalism if there are other ways of doing an evasion of the one-year time limit to rely on the particular way that New York chose to do it here. But at the same time, New York chose to do it here in a way that says let's pretend something happened that didn't happen, and let's create a triggering date that is not, in fact, the date of receipt. I mean, you're on the wrong side of the formalism, it seems to me. You know, maybe that shouldn't matter, but I find it hard to see where we get the authority for New York and National Fuel to create a fictional receipt date. Well, again, Your Honor, it is the fact that the act of withdrawing and resubmit by itself allows, which this court sanctioned in that case, does allow for a new receipt date to be created. And therefore, there's nothing in the statute that suggests that the form in which that creation of a new receipt date takes place should be dispositive. But isn't a completely fluid receipt date that's really at the mercy or at the whim of the parties, isn't that just simply inconsistent with what Congress said? No, Your Honor, because if there is an actual abuse of Congress's intent to prevent indefinite delay, then the courts have shown the ability, and again, Super Valley is the example, to step in and say there is a coordinated scheme here to eviscerate the intent of Congress, and that cannot stand. And so every time this issue comes up, we have to have some sort of plenary proceeding to figure out what's in the minds of these parties that reached the agreement. That doesn't seem workable to me. No, Your Honor, if you're going to the question of whether or not there was coercion or what was in the mind of the parties forming a contract... No, you talked about whether there was evidence in the record of someone suggesting that there was, you know, collusion or abuse or attempt to gain the system. How is that supposed to be determined? In precisely the same way, Your Honor, that the D.C. Circuit did in the Hoopa Valley Tribe case, looking at how long has this been going on? Has there been any action on the permitting? Has the state taken any action whatsoever processing the permit? Is there a complete and total shelving of the application? Has this affected the federal permitting process? So here, by stark contrast, you have a single month. You have a state diligently looking at the application, diligently going through public comments. In fact, the flip side of this is that in the absence of the extension, D.E.C. would not have had time to consider outside views. And you have a reality that FERC's permitting process was in no way, shape, or form affected by what the ostensible delay here that D.E.C. had. FERC issued its Certificate of Public Convenience and Necessity in February, and D.E.C. issued its denial in April. The issue is that D.E.C. denied the permit. If D.E.C. had granted the certification, we would not be here. The problem is that national fuel didn't get what it wants, and so I see my time is up, but I would be happy to answer additional questions on rebuttal. Thank you. Thank you very much. We'll hear from your adversaries. Good morning, Your Honors. Thank you. This is Savannah Chu for the Federal Energy Regulatory Commission. The text of the statute is clear, as this court recognized in the first New York State D.E.C. case from 2018. This is a bright-line rule, as Your Honors have observed. If we accept the petitioner's argument, then we're no longer applying the plain text of the statute. And here, the Commission was being faithful to the text of the statute. What was in your mind when you agreed to extend it? Oh, I'm sorry, Your Honor. The Commission is not aware of what was in the minds of the parties when they signed that letter receipt agreement. The Commission actually feels that it should not be in the business of determining what's in the minds of the state agency and the private applicant if they choose to enter into such an agreement. Your position is that whatever National had in its mind, whatever the State of New York had in its mind, this is a bright-line rule, and you just can't extend it in the way the parties here attempted to. Right, Your Honor. But, of course, you thought that you could extend a different deadline that Congress enacted for the same purpose, that is, to make sure that these things are done expeditiously. But you created a device by which you could evade, and you defended that in the D.C. Circuit all the way through an en banc argument. How is that position consistent? Well, Judge Wayne… Oh, yeah, we were wrong. Is that your position? We were just wrong. Well, let me explain a little bit more. The Allegheny decision that Your Honor is referring to from the D.C. Circuit, that involves the Natural Gas Act and the Commission's ability to… Under 15 U.S.C. Section 717, R, A, and B. That language is quite different from the Clean Water Act provision at issue here. And without getting into the details of Allegheny, I just want to point out that the D.C. Circuit decision holds that an agency tolling order cannot delay judicial review. However, it also noted that even after a petition for judicial review of a FERC order is filed, the Commission retains the authority to modify or set aside its initial order. So until the agency record is filed in court, the agency can modify or further explain its decisions in an order on rehearing. Isn't that exactly the same thing that New York State is claiming the right to do here? To take a little bit more time to do an explanation of what happened rather than proceed immediately to judicial review, which would be the alternative, right? If New York threw up its hand and said, look, we've got a deadline. We've got to make a decision based on what's in front of us as best we can, and we're just going to deny this. If they did that, the remedy for national fuel would be judicial review, right? So, Your Honor, the Commission is, of course, seeking to act expeditiously on all of the hearing requests are pending before it. I do want to point out that Section 717RA talks about the ability of a person aggrieved by an order issued by the Commission to apply for a rehearing within 30 days. And it then says that unless the Commission acts upon the application for rehearing within 30 days after it is filed, such application may be deemed to have been denied. I'm not on that anymore. I'm worried about what happened here and what happens under the Clean Water Act. What's your position on withdrawal by the applicant if it gets close to the deadline, near the end of the year, and national fuel gets a call from the DEC that says, look, we just want to give you a heads up. Next week, we're going to issue a decision denying your application. National fuel says, why? DEC says, well, it's hopelessly inadequate in explaining factor X that matters very much to us. And national fuel says, oh, OK, look, I get your point. And national fuel thinks, boy, and if we let them deny it and then we seek judicial review, they're going to win. So how about we withdraw the application and we'll submit a new one that gives you what you think you want? Is that going to be OK with you? And the DEC says, yes, national fuel withdraws the application and files a new one. What happens then? Is there still a year to act on the new application? Maybe, your honor. So this is not a bright line rule anymore. It's now something that's going to be decided by some rule of reason as to whether there's collusion or not. No, your honor, it's still a bright line rule. But so under Hoopa Valley, which is persuasive authority here, the court in Hoopa Valley discussed the withdrawal and resubmission at length. But Hoopa Valley is an outlier. I mean, there the process was going on year after year after year. That's not this case. Right, right. Of course, the time frame is different. But what I mean to say is that there are circumstances in which an applicant might validly withdraw and resubmit an application. And if they do, then there would be a new application and it would take a year. The DEC would have a year to act on the replacement application. If it were a truly new application, your honor, and that's what happened in the Islander East case. I don't understand what's truly new. It's the same application with some extra stuff put in. Well, a supplement. A supplement. Right. So I'm not sure there. And I think that's where that's where there might be a factual determination to be made about how new that application is. But that's part of the trial. Whether the application is new or not, that doesn't strike me as workable at all. Well, it wouldn't be a trial, your honor. I mean, there would be a hearing to determine whether an application is new. I mean, you all presumably have, you know, your hands full with the authorities given to you. But I mean, that just seems to me to be an invitation to administrative confusion. Well, your honor, in this case, yes, we had in this case, this was a very clear. The application remained the same. There was an agreement to to set a fictional date of receipt, which plainly contravened the statute. Excuse me. Can you please stick to the thing that I asked you, which is, would it be permissible for an applicant to the D.C. that expects for some reason that I was told that we're going to reject this if we have to act right away on what you've got. But maybe you could give us some more. And they say, yeah, rather than let you deny it. And we'll seek judicial review because we think you're wrong. We think our application was good enough. What we'd rather do is answer your questions and provide a new supplemented application. Give me five more pages to the hundred and fifty pages you'd already submitted. Well, that is an issue that hadn't been addressed before. I think the answer is actually in this court's 2018 decision and where the court observed that the D.C. could just deny the application without prejudice. I think that in the circumstances you're outlining where it's just some supplemental information that is required, then the answer is that the D.C. would have to deny it without prejudice. If they deny it without prejudice and then the National Fuel or the other applicant, wherever it is, submits a supplement to the application, what is the deadline then? If it were denied, Your Honor, and National Fuel resubmitted the application with the supplement, then the clock would start ticking from that date, from the date of the new submission. So it would be a year then? Yes, it would be another year. I mean, there are circumstances in which the initial year, that time can lapse. It is possible for this time to go beyond a year, but it's not in the circumstances. So if that could happen, then I don't understand why it isn't a formalism to say if they do it in a different way. I mean, you say they have to deny it without prejudice. Suppose they don't. The next step is we don't deny it. If you want to withdraw your application and submit a new one with a supplement, go ahead and do that. And National Fuel took that option. In that case, that would be different than denying it without prejudice. And if they can do that, why can't they do this? These are all ways in which DEC can get some extra time with the consent, and maybe even at the choice, at the preference of the applicant, right? Right. Your Honor, in the event that the application is denied, it is possible then that the applicant might take the option of seeking judicial review at that point. So that would be at the option of the applicant. But why can't they take that option in advance? They might prefer not to have a public denial of their application as insufficient. And then they get a choice. Well, they might say, look, our choice is we'd rather submit a supplemental application. So they withdraw their application. Are you saying they're not allowed to withdraw the application and submit a new one or a supplemented one? Well, I guess in that circumstance, there is the risk. In what circumstance? The circumstance that Judge Lynch is speaking of, where the pipeline has a preference of withdrawing its application. There's a risk to both the pipeline and the state agency that the clock stops and the commission determines that there was a waiver. But you're determining it. Why can't you tell me whether that's allowed or not allowed? The risk is what your position is. So I want to know what's your position if that happens. Right. Your Honor, I can't speak on behalf of the commission for, you know, I can speak as to how the commission would decide the case if it were presented to it. So you're telling me that you don't have a position on whether if these very parties had done something slightly different, it would or would not comply with the law? Well, the agency did not resolve that issue in the orders that are on review. But I will say that it's possible that there could have been some alternative. Your position, I thought, is that this has to be a bright-line rule. Now you're telling me it doesn't necessarily have to be a bright-line rule. We might or might not take a different position if they had chosen a different mechanism for, in effect, waiving the bright-line rule. It's a bright-line rule where the state agency and the applicant sign an agreement to set a different date than the actual date of receipt. Yes, and what I want to know is, excuse me, what I want to know is I understand an argument that this is purely a formalism. But it is an important formalism because they're just lying to us and they're not allowed to do that. They're not allowed to create a fictional receipt date. I understand that, but what I want to know is, is that just a formalism? And if they had chosen a different mechanism for extending the time period, that would or would not be allowed. Is this a substantive position you're taking with us or just a formal position that you're taking? Well, I think it's both, Your Honor. I think that there is a circumstance in which National Fuel could have legitimately withdrawn its application. If National Fuel, for example, changed the route of its pipeline and it now has a new route, it's crossing different streams. There's a different environmental impact analysis. Can I just add, is it FERC's position then? I'm sorry to interrupt, but I think I knew where you were going. So is it FERC's position that in implementing the provision, there's a difference between comparing one application that is withdrawn and a new application comes to make sure this is substantively a different application than the one that was submitted earlier and engaging in an evaluation of whether the parties do unequal bargaining power or whether a state is attempting to evade the substantive interest in timeliness? Engaging in that inquiry is a different thing for FERC. Is that the point you were making? Yes, Your Honor. Thank you. It is a fundamentally different thing to evaluate two separate applications. That's well within the Commission's abilities and its experience to compare two different environmental applications. But I'm still not clear that I understand your response to Judge Lynch's question. So in the case of an applicant who realizes at the 11th hour after 300 days that the application is not complete, there are certain sections of the route that weren't adequately handled in the application, and they want to withdraw it, clear up that omission. It's your position that that would be okay, right, and that would reset the clock? Yes, Your Honor. And what would the rule be that you would have us write in an opinion that covers that? So, Your Honor, if the applicant realizes on its own that its application is inadequate in some way, then we would certainly – I expect that it would be permissible for that applicant to withdraw the submission. What if it's told by DEC? What if it's told by DEC that their application is insufficient in some way? And they choose, then, in response to that, to withdraw rather than to say, go do your damnedest, deny it, we'll go to court and we'll beat you because we think our application is good enough as it stands. That's different? It's only if they spontaneously recognize a flaw rather than if the flaw is pointed out to them? There is a difference, yes, Your Honor. That's right, because the legislative history of the Clean Water Act shows that Congress was concerned about state delays. That's evident in all of the legislative history of this provision. So, where it becomes more complicated and difficult is where the state tells the applicant that there is insufficient information. And that was the situation in the first New York State DEC case in 2018, where the same state agency, on multiple occasions, told the pipeline applicant that its application was incomplete. So, what happens to the applicant, then, if DEC says this is insufficient and the applicant thinks, oh, gee, maybe you've got a point? The option you're suggesting is, since DEC raised the objection in the first place, what the applicant needs to do is to throw up its hands, let DEC deny, seek judicial review, and lose. Then, after that, presumably, they can come back with a new application, right? No, Your Honor. I'm sorry if I misspoke. I didn't mean to indicate that, in that situation, the applicant would have to throw up his hands and seek judicial review. But, in that circumstance, if the pipeline agrees that the state is right, that the application is insufficient, and it voluntarily submits a new application with additional information, then that might restart the clock. And, if no party is seeking judicial review, or even a determination by FERC regarding any waiver, then I think that the statute would accommodate that situation. And then they would get a whole new year, not just 36 extra days. Right, but that's not a good thing from the pipeline perspective. I'm sure it's not a good thing from the pipeline perspective. It's not a good thing from anybody's perspective. But what I'm trying to get at is, if there is a possibility for withdrawal and resubmission, that does kind of make it more difficult to say you've got a bright line rule. Because the parties can work out an agreement of some sort that would permit an extension for, in effect, a full year by the device of withdrawal and resubmission. I think that's the problem. It's the agreement that is the problem. So, the parties agreeing to circumvent the one-year bright line rule, that is the problem from the commission's perspective. And I think that's the problem from the perspective of this court in the first New York State DEC case, and also the Hoopa Valley court. But how can you prevent an agreement? Because then you're saying that everybody's just got to gamble. That if the DEC thinks the application is insufficient, its only option is to deny and risk that a court will disagree. And if the applicant thinks that maybe DEC is right, its only option is to withdraw or seek judicial review. But the parties can't come to an agreement about what makes sense to do. Because the agreement is the problem? Well, an agreement to subvert the one-year rule is a problem. But if there are genuine problems with the application, if there are clear omissions, and if there are real substantive issues that the pipeline needs to work out, then the pipeline will work that out with the state agency or on its own. But it's in the interest of the pipeline to do it expeditiously. And there is always the possibility of judicial review. And here they took the option of doing it expeditiously by rather than going through some additional process to submit more things that would give them an extra year, because it's in their interest to do it expeditiously, they said, let's just create a 36-day extension. And that is not permissible while withdrawing the application and submitting something that had an extra five pages in it would have affected a one-year additional time period. But, Your Honor, I do not agree. I do not necessarily agree that submitting a new application with just five additional pages would immediately trigger a new one-year period. I thought you just said the opposite. You told us the opposite five minutes ago. I'm sorry if I misspoke, Your Honor. What I'm meaning to say is that if it's just five pages of supplemental information that may not reflect a true belief by the pipeline that there is new substantive information to be included, then the one year doesn't matter in your view. Is that right? No, then the one year does matter. The one year is a bright line rule. That is not a subjective standard. So if the one year is a bright line rule, how can you get in the five pages after the one year? I don't understand that. The five pages, I think that's where the circumstances of those five pages become important. So in that situation, that would be a factual determination for the commission to review and to assess whether that new submission is truly a new submission. And that's the question that was left open by Cooper Valley. FERC would decide whether the additional information that was requested by DEC is really important to DEC's clean water mandate or not. No, I'm not saying that FERC would make a determination about the DEC's mandates under state law. But isn't that what's important? Excuse me, isn't that the only objective way rather than looking into who had what in mind and who was trying to collude or subvert? Isn't the only objective way to make a determination whether the supplemental information or the new application is addressing some real problem or a fake problem? Right. So I think the question really would be whether it's a new application or not under the Clean Water Act. How do you tell? How do you tell? Well, FERC would be reviewing the original application and reviewing the new application and determining whether it's new or not. Whether it's new or not, doesn't that have to depend on an expertise about what's important to clean water? Because it may be only a paragraph. In New York State. So the commission would make a determination in the first instance as it is charged with doing under the statute. And the court would have the opportunity to review the commission's decision in that case. Now this scenario has not presented itself to the court yet. The scenario where there's a new application that, you know, the question is whether or not it's truly a new submission under the Clean Water Act. So this is an issue that the commission would address in the first instance. It's the question that was left open by Hoopa Valley. But it wasn't the case. It wasn't the issue in the New York State DEC case. And it's not the case here, of course, where the question is just the straightforward application of the one year rule to the date of receipt of this one application. Thank you. Thank you. We'll hear from your colleague, Mr. Joyce. Good morning, Chief Judge Livingston. May it please the court. My name is Joyce for the National Fuel Intervenors. I want to make three main points. I think the first two go to your comment, Judge Livingston, about claim processing rules. The second also goes, Judge Lynch, to your comment about the interests of other parties. And the third, I think, is to unpack the notion that Sierra Club floated here, that there's been improper gamesmanship and along the way, response to a number of concerns that Judges Lynch and Judge Parker expressed. On the first, this just isn't a claims processing rule. This reads like a jurisdictional statute. It has all three touchstones of jurisdictional statutes. It talks about the power of the adjudicator. Indeed, 401 begins by literally talking about jurisdiction. It talks about geographic jurisdiction. States have power to determine these issues where they fall within their borders. Then it moves on and does the other two things that the Supreme Court repeatedly says are important. It has a mandatory deadline and it has a consequence for that deadline. What was in your mind when you agreed to the extension? It's a great question, Judge Parker. I think what was in our mind is that this had been a— Did you think you were doing anything improper when you agreed to the extension? No, Judge Parker. Look, this was against the backdrop of the issues that were resolved in Millennium. DEC had repeatedly taken the view that receipt did not matter. Only receipt of what it deemed a complete application mattered. Notwithstanding—and this is where this record is important. We submitted an application in March of 2016. The DEC has a document in the record saying that they had to make a determination on complete application within 15 days. They never did that. They never issued a notice of complete or incomplete application. Every step along the way, National Fuel said to DEC, we're done. We've submitted a complete application. Why aren't you ruling? In September of 2016 at SA82, we submitted a supplement, a true supplement, responding for more detail about things in the application. National Fuel said, this application is complete. You haven't deemed it complete. Same thing happened in November 2016. SA88 submitted a supplement to respond to additional questions and said, this application is complete. Every step along the way, DEC foot-dragged here. And then it's not surprising that it foot-dragged here. The backdrop is that there were three major natural gas pipeline projects under FERC's 401 review in recent years. In every one, FERC has found waiver. Every one occurs against the backdrop of the governor saying that he was going to engage in a fight against fracked gas from neighboring states and block pipelines. That's what was in our client's head as we got sent an agreement with an endorsement line that said either take a denial or give us this extension. That's a very different situation than the ones your honors, both Judge Parker and Judge Lynch have postulated. Mr. Joyce, I hear your point. I hear the argument. And you would just have to take a denial, you say. But first of all, if they entered a denial, you would have the opportunity for judicial review, right? Right. So their power is limited by whether they have a reasonable basis for denying the application at the moment that they say they're going to deny it, isn't that right? On a non-arbitrary and capricious basis, I submit Judge Lynch, it's a powerful tool that the agency has. You know, I hear you. I do hear you. I do appreciate that. But when you say this is all about endless foot dragging, the extension that they asked for and that you acceded to was 36 days. It wasn't indefinite. It wasn't another year. It wasn't forever. It was 36 days. And then they acted at the end of 36 days. So whatever anyone might have thought at the time about, oh, this is step one down the primrose path, didn't turn out to be that, did it? But it very well may have. And I think, look, that's the Hoopa Valley holding. Hoopa didn't turn on the fact that there were multiple applications. To the extent that Hoopa struggled, it struggled because there were new applications. This case is an easy one. We have a single application. Can I go back to that, though, Mr. Tracy? You say it's a single application. And we said it was complete. And then you said, but then we submitted a supplement. And we said, this is complete. And then they asked for more information. And you submitted another supplement and said, this is it now. This is complete. So there was new information being presented to the agency that the agency presumably had to absorb and react to, no? So I disagree with the categorization of it as new information. Excuse me. I'm just categorizing it as you did, as a supplement. I would have thought that a supplement means new information. If I'm wrong, tell me what's wrong with that. Well, Judge Lynch, the DEC regulation at issue here, 621.6, refers to a complete application. And it goes on to say that a complete application may be supplemented. This application was complete from March onward. It had information about all the stream crossings at issue. And then DEC. What's in the supplement, Mr. Joyce? So DEC expressly asked for more detail about the same stream crossings. This isn't a situation as. I'm sorry. Why is that somehow illegitimate or footray? It might be. I understand that if we want to look in people's motives, we might conclude that this was bogus. But why is it different to. If they ask for more information about the same stream crossing, because that's something that's important to their process. Why? Why is that a problem? So I don't think it's necessarily illegitimate to ask for more information. I think the record here shows a history of foot dragging. After March of 2016, DEC and National Fuel met about the application. And asked, DEC, excuse me, National Fuel asked whether DEC needed anything else. DEC sat on its hands, eventually made a request in August for some supplemental information. We submitted that supplement. Even if you want to treat that as a new application, what the DEC rules say, and what DEC had previously said, that should make an incomplete, complete determination within 15 days. It didn't do that. The longest that reg ever provides to do that is 60 days. It didn't do that. Instead, it dragged and dragged and dragged. And in January of 2017, finally, it makes this completeness determination that it could have made back in March of 2016. That's the history of the letter. Didn't it have more information in January than it had in the previous March? Didn't you just tell me that they asked for more and you gave it to them? It certainly had no more information than it did in November of 2016. Look, if they had issued the notice of complete application when they got the application, all their concerns about their purported inability to do notice and comment go by the wayside. And then it looks even more pretextual after the fact when you look at when this case comes back on remand, they didn't sit on it forever. They didn't. Well, forever. Their foot dragging amounted ultimately in terms of what the Bright Line rule is to a month. That's the record on which we conclude that they were completely foot dragging. This was all in bad faith because although they could have taken a full year, 365 days with minimal review of whether that was necessary, they took 400 days instead. And that is the record of foot dragging. And in the post remand period, it took an additional 180 some days, Your Honor, about the exact same application that had been pending whether you want to call it November 2016 or March of 2016. The same application that has been pending since March of 2016 was still pending before DEC in August of 2019. Suppose on the run up to the one-year period, you had identified a material omission in the application. Do you see any legal impediment, statutory impediment to your agreeing to a 30- or 60-day extension? I do, Your Honor. I think this goes to both of these claims processing points. This one-year period is supposed to be a one-year period per application, per receipt of an application. Then how can you in good faith have entered into the agreement? In the agreement here or the agreement you postulated, Your Honor? I'm sorry. In the agreement here. Let's stick to this case. Look, I understand you were, you know, the frustration of dealing with governmental agencies, particularly in the complicated environmental arena. There's relatively little we're going to be able to do about that. I'm just trying to fathom your thought process when you struck the deal. Sure. I think I addressed this earlier, but maybe let me try it once more and more pointedly. Unlike the equal parties cases the government or, excuse me, DEC relies on, this was a deal with one's own adjudicator. It's like if you're in a speedy trial act case and the other side is asking for an extension and the judge says to you, you know, you can do what you want about this extension, but I'm going to revoke your bail if you don't take it. That's what this agreement was like. Or, excuse me, isn't it also like the situation where a party agrees to toll the statute of limitations because the prosecutor says, look, we're going to indict you tomorrow and the statute is running and the party says, wait, wait, wait, I want to make a new presentation. Isn't that the same deal? No, no, no, no. I don't think it is because there's actually a big difference, right? In United States v. Hill from the Supreme Court and other Supreme Court cases, the Supreme Court and this court many times has recognized that the government, in a criminal case, stands in the shoes of the public interest. And this takes us back to the earlier point, Judge Lynch, about doesn't this rule protect other parties' interests? Yes, it does. And it protects interests, including FERC's. One of the things that's really interesting here is waiver, not waiver agreement, is all a red herring. If you look at Tennessee Gas v. FERC, which FERC cites on page 29 of its brief that Judge Wald wrote in 1989 on the D.C. Circuit, FERC can act on its own motion to consider arguments not raised before the commission. FERC could have gotten to this exact same place invoking exactly what Hoopa Valley says, that this is a scheme to protect the federal licensing interest. This is a scheme to prevent FERC's responsibilities from being usurped. It likewise could have done so to protect other public interests, Judge Lynch. We noted in our brief the Pennsylvania interest. There's the interest in consumers. And these aren't things we made up. If you look at the FERC certificate, paragraphs 23 and 24 refer to the public benefit of that certificate. Paragraph 32 refers to the consumer interest in that agreement. Paragraph 93 refers to market conditions and market demand. And that Tennessee Gas case is just one of the ways FERC could have gotten there. In constitution, FERC's 2019 order finding waiver, constitution, FERC in paragraph 17, noted that FERC can request voluntary remand from a federal court of appeals, sui sante, to change its legal ruling without any request from a party. And as Judge Lynch noted earlier- This is why it's not an estoppel argument, right? Because whether we estop you doesn't really matter. It's not about your ability to object or not object. It's about what FERC's rules need to be. That's right. So let me come full circle. Look, I understand why the Hoopa Valley case struggled with these issues, right? Because there was a textual hook, as our brief points out. There was truly a new application. An application everybody said was new. Whatever, Judge Lynch, you hypothesize about supplements, DEC never contended that we submitted a new application. To the contrary. It never objected when we said that those were supplements to the very same application. And look, FERC, I think, is struggling with what to do in those cases. But there are a couple cases I could direct you to where it has dealt with this aspect of Hoopa. I think it's important to look at the PG&E case. Let me go back again, Mr. Drace, to the supplemental information. I'm going to try and make an argument on your behalf, but maybe it's not a good one or not one you want to make. But isn't the idea something like that the reason for the delay here was DEC's difficulties with its own process, not that the new information was some kind of game changer? Is that what you're saying? It's not as if whether or not you call it a new application or supplemental. I think that's fair. And I think I can be more granular for your honor than that to illustrate why. In our initial application, and recall, your honor, that our application came after nearly two years of pre-review with DEC. A process started in 2014 and with FERC around the same time. We had planned a route. We had discussed with DEC what that route was. DEC had told us that when we submitted our application, we had to have an analysis of all the stream crossings. We did that. Stream crossings are wetlands. I think it's 90-some pages of stream crossing analysis. Then DEC comes back after having that application for months and says, can you provide us more detail about these 55 crossings? And we do. And look, I think that's part and parcel of a regulatory back and forth. We may have engineering reports that summarize underlying documents, et cetera. So they say give us more information. We do on those 55 crossings. Then it sits again. We say this is done. We've given you everything you need. And then they come back and ask for information. I guess I don't understand exactly why you say they sit. I don't want to quibble too much here. I assume they're looking at a whole bunch of documents that you gave them and trying to figure out whether it answers their questions, right? I wish the record were that clean. But I think if you look at Ms. Lair's affidavit and the record where she says she was repeatedly following up with DEC, asking if they needed anything more. And I think it's important, again, to turn back to 621.6, this notice of complete application provision, which this court affirming the decision in Millennium found DEC had abused before. DEC was refusing to say whether it thought the application was complete or incomplete. Why? Because if it said it was complete, then its notice and comment would have started. And National Fuel at every time said this application is complete. Just tell us it's complete. Let's get notice and comment going. And it refused. It refused to do either. And the statute is mandatory. Shall issue a notice of complete application or incomplete application. So I think that is foot dragging. And then coming back all the way around, after this September submission, DEC says, can you give us more information about these 13 specific stream crossings, a subset of 55? And we do more of that. This isn't an instance like the one hypothesized by Ms. Chu where, you know, at supplement one, we said, we know we told you there were 55. There's really 58. We've got these three new ones. Look at those. I think that's the harder type of question that HOOPA was dealing with, at least if it had come in a truly new application. And I think that's what drives HOOPA's discussion of what do we do about an application that's truly new? But this case is one in which, as I said before, the same application had been pending from March 2016 to August 2019. There was nothing resubmitted. And DEC never ‑‑ excuse me, National Field never wanted to resubmit an application. It was ‑‑ I'm sorry. You suggested that there were some cases that we might look at, particularly in dealing with the HOOPA value problem. Yeah. You know, Judge Livingston, I think the FERC opinions in the PG&E docket are helpful, Pacific Gas and Electric. There's one at 172 FERC 61064, in particular paragraph 7 from 2020. It underscores that Applied HOOPA Value finds a waiver and says agreement is not necessary to the process. It says, quote, this coordination between the state and PG&E is sufficient evidence that the state sought the withdrawal and resubmittal of the PG&E application to circumvent the one‑year statutory deadline. So, to hear, right, on DEC's best explanation, what it's saying is it wanted additional time to do notice and comment. But as I've said all along, nothing was precluding DEC from doing notice and comment, except for the very problem that this court recognized in NYSDC versus FERC in 2018, that it was defining when an ‑‑ DEC was defining when an application was complete, and it was defining when it was complete such that notice and comment would start. And FERC called that unreasonable in the decision that the court affirmed, and it's really trying to do the same thing here. And so I think when you're talking about these schemes, this scheme is certainly no better than the HOOPA scheme, and I'd argue it's worse, because it just doesn't have even that textual hook, which I understand, Judge Lynch and Judge Parker, why it gives you trouble. I think it gave the D.C. Circuit trouble, but I think that's for a later day, and I think FERC has started to work through those issues in the cases like PG&E. I'm happy to answer any other questions. I know I'm way over my time, and I appreciate the court's indulgence. I think we'll hear rebuttal. Thank you, Your Honor. I want to focus on this receipt agreement. The first thing is to kind of push back on the idea that this established a fictional or legal fiction as far as the receipt date. In the Himeshoff case, the Supreme Court held parties can modify the commencement, what triggers the commencement of a statute of limitations, as well as its length. Second, with respect to FERC's concerns about getting into record disputes, all it has to do is to give effect to agreements entered into by the parties before it. Well, sure, but is not this date that was picked a totally artificial date? It's not the date when some more information came in, right? That's right, Your Honor. That was the approach that the parties decided to take in this case. They just chose to give an extension of 36 days, basically, is what you're saying. To establish a date certain that happened to be 36 days later than it otherwise would have been. That's how the date was picked. We want a 36-day extension, and so we calculate back and pick that date. That's correct, Your Honor. That's the effect that it had, was to give the department 36 days, again, to complete its public notice and comment process. Okay. And again, but this gets me to one other thing. In all of the scenarios that I've been positing where there is a supplement or a new application or a withdrawal, it's because there is some defect in the identifiable defect in the application. I take it, and it seems to me that was not the case here. In other words, it wasn't the DEC saying, hey, you're getting a denial because we need something new. What DEC said was, we have more process that we want to go through that's going to take us an additional time period, and so we want an extension. Is that a misleading way of characterizing it? That's a bit misleading, Your Honor. It was a process that DEC had to go through, that it must go through under 401 and the agency's regulations. Mr. Joyce has made a lot of arguments about the record here. We're not here because FERC said DEC engaged in foot dragging. We're here because FERC said, as a legal matter, this receipt agreement was ineffective to extend the statutory deadline. That's a very concrete legal conclusion. As to the facts of the foot dragging, they're simply not present here. DEC gets, on average, 4,000 applications for a 401 permit each year. It's denied maybe a total of eight in the last decade, I think is the most recent number. It's approved natural gas projects, such as the Atlantic Bridge Project and the Eastern System upgrade proposed by Millennium Pipeline. This particular case is a very large infrastructure project with a lot of stream crossings. It took time for DEC to review the application materials and to complete the public notice and comment process. Am I out of time? I'm happy to answer any other questions. Thank you, Your Honors. Thank you. We will take the matter under advisement. I'm sorry. I'm long-worn. Hollywood Square is sometimes confusing. Go ahead, please. I'm just saying, Your Honor, thank you. I just want to go back to the line of questioning that Judge Parker and Judge Lynch were engaged in with FERC's counsel, particularly the idea that this is an invitation to administrative confusion. This isn't actually a bright line rule, despite FERC and National Fuel's claims to the contrary. And to take a greater step back and to understand what the purpose of Section 401 is, which is not to let FERC make decisions about Clean Water Act. It is to allow the state to make good decisions about the Clean Water Act. And what this structure invites is FERC being the arbiter and having an incredibly aggrandized role about, to Judge Lynch and Parker's point, what is a new application? What is a supplement? It's not up to the applicant to decide, oh, I think there's a defect. So I, out of the goodness of my heart, am going to allow for a withdrawal. And then when a waiver comes or when a decision comes down from the state they don't like, they flip the switch and say, actually, FERC, we think there's a waiver here. And the consequence, to go to Mr. Joyce's point about what the public interest here is, the public interest is not the consumers. This is the Clean Water Act. This is not a decision under the Natural Gas Act. This is about protecting the water of the state of New York. So the interest of consumers or the interest of the pipeline company are not relevant to interpreting the Clean Water Act. I'm sure it's not relevant to interpreting the Clean Water Act as such, but this is a combination case. The reason why this application had to be submitted is to get a permission from FERC, ultimately. And the reason, and this deadline is created, at least in part, to support that process, isn't it? The deadline, it is, Your Honor, insofar as, and perhaps the public interest could be invoked if there had been some kind of problem that the delay created to FERC's review under the Natural Gas Act, but it didn't. As I mentioned earlier, FERC issued the Certificate of Public Convenience in February, and then DEC issued its denial in April. The delay did not do anything to FERC's process. The problem that National Steel has here is that DEC said no. If DEC had said yes, we wouldn't be here. And that, therefore, the interest that Mr. Joyce invoked earlier as to the consumers, FERC, etc., aren't applicable when we are trying to decide what the process should be under the Clean Water Act. What would the test be then? I mean, if the parties can contract for reasonable extensions, or if they can point to something concrete, you would have to have a case-by-case evaluation. Maybe you have it in any circumstance, in any event, but do we look at the length of the time? What test are you proposing? Your Honor, I think it is clear that no matter what bright line someone wants to point to, there is a need to look at a case-by-case. Bright lines usually have some sloppiness about them. And the problem here is that the sloppiness created under FERC's view is a sloppiness that goes to unwittingly yank the rug out from underneath the state in a retroactive fashion when the state asks for only 36 days and the applicant agrees and everyone thinks everything is fine. Is it asked for two years? No, Your Honor. It could not ask for two years. The request needs to be within the year that the statute contemplates. And if those requests become too voluminous, as they did in Hooper Valley, which, by the way, was not about a new application. It was very clear that the court repeatedly said it was a one-page letter saying we resubmit. If there are genuinely new materials going in, and this is a fact-intensive decision, and one that deference should be given to the state in terms of the state being able to say what it needs to see. A point that needs to also be remembered is that Congress expressly in Section 401 put the burden on the applicant. The applicant is not guaranteed a permit under Section 401, is not entitled to a certification. They have to prove that their project will comply with the Clean Water Act. And the state needs the time to do it. And so that should be a real... The test should be examining what is reasonable, just as Hooper Valley did, and looking at is this an effort by the state and the applicant to coordinate to create indefinite delay. And that kind of delay, the length matters. I don't know that I can tell your honor that one year is not enough or exactly where that line is. It will be a combination of case-specific factors going forward that need to be assessed. But that has to be the case if the actual purpose of Section 401 to preserve states' rights to protect their water is to actually be balanced with the need to not allow states to delay forever. And just one quick question. And does FERC get a role in deciding that reasonableness in the first instance? Or is this purely going to be something that takes place in judicial review and the FERC process has to stop while that goes on, the judicial review of the state decision? Your honor, the case law is fairly clear on the point that for a case for Section 401 determinations that are triggered by FERC's funding process, that FERC is the reviewer in the first instance. That's all I wanted to know. Thank you. Thank you all. Very nicely argued, very helpful. We will take the matter under advisement and move on to the next case. Thank you, your honor.